# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

    v.                                                   Civil Action No. TDC-19-2810

ROBERT HILLIS MILLER,

    Defendant.

## MEMORANDUM OPINION

The United States Securities and Exchange Commission ("SEC") has filed this civil enforcement action against Defendant Robert Hillis Miller alleging violations of the registration and antifraud provisions of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. §§ 77a – 77aa (2018), and the antifraud, reporting, and certification provisions of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78a – 78qq, during the period from August 2013 through October 2015. Pending before the Court is Miller's Motion to Dismiss or Transfer in which Miller seeks dismissal for lack of personal jurisdiction and improper venue or, in the alternative, transfer of this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

In November 2009, Miller founded Abakan, Inc., ("Abakan"), a Nevada corporation with its former principal place of business in Miami, Florida. During the period from August 2013

through October 2015 ("the Relevant Period"), Miller was the Chairman, Chief Executive Officer, and largest reported beneficial owner of Abakan.  Until May 2018, when the SEC revoked Abakan's registration due to the company's delinquency in filing reports, Abakan's common stock was registered under Section 12(g) of the Exchange Act.  Accordingly, up to that time, Abakan and its officers, directors, and major shareholders were required to make public filings on SEC Forms 10-K, Schedule 13D, and Forms 3, 4, and 5.

Prior to the creation of Abakan, Miller arranged for the shares of another company under his control to be issued under the registered names of three Uruguay-based entities:  Stratton S.A., Green Chip S.A., and River Fish Holdings, Ltd. (collectively "the Uruguayan Fronts").  The SEC alleges that Miller secretly exercised control over shares of Abakan owned by the Uruguayan Fronts during the Relevant Period by supervising and directing third parties affiliated with each of the Uruguayan Fronts in activities relating to those shares.  Specifically, the SEC alleges that during the Relevant Period, Miller initiated and negotiated transactions between the Uruguayan Fronts and Abakan involving Abakan stock to further his own objectives.  Miller also directed the disposition of the proceeds from these transactions.

The SEC asserts that throughout Abakan's existence, the Uruguayan Fronts obtained and sold Abakan shares in unregistered public offerings supported by materially false and misleading statements made, drafted, and disseminated by Miller that fraudulently disavowed that the Uruguayan Fronts were affiliates of Abakan, Miller, or both.  Proceeds from these securities transactions were allegedly used in part to pay for Abakan's business expenses, including office rent, vendor expenses, and Miller's Abakan salary.  According to the SEC, in furtherance of this fraudulent scheme, Miller entered into a contract with Surety Financial Group ("SFG"), a consulting firm based in Reisterstown, Maryland, to find additional investors to purchase Abakan

securities by communicating with existing broker and institutional investor bases, developing new shareholder bases in the investment community, and preparing and disseminating press releases to promote Miller's businesses.

The SEC has now filed a civil enforcement action in this Court against Miller, alleging that Miller made materially misleading statements in his own and Abakan's public SEC filings by failing to fully disclose his beneficial ownership of shares in Abakan, including by omitting his ownership of an additional 11 percent interest in Abakan through the shares held by the Uruguayan Fronts, and by not disclosing his engagement in the unregistered public offerings of Abakan shares through the Uruguayan Fronts that resulted in at least $1.39 million in illicit proceeds. In particular, Miller filed more than 40 forms with the SEC between April 2013 and September 2015 that allegedly contained materially misleading statements. These filings were submitted electronically to the SEC's Electronic Data Gathering, Analysis, and Retrieval System ("EDGAR") server, which is physically located in Beltsville, Maryland.

The SEC asserts that there is subject matter jurisdiction over the action pursuant to 15 U.S.C. § 77t(d)(1) and § 78u(d) and personal jurisdiction over the action pursuant to 15 U.S.C. § 77v(a) and § 78aa(a). The SEC also asserts that venue is proper in this district pursuant to 15 U.S.C. § 77v(a) and § 78aa(a) because certain acts, practices, transactions, and courses of business related to the alleged violations occurred in the District of Maryland.

## DISCUSSION

In the Motion, Miller asserts that this Court lacks personal jurisdiction over him because the case and underlying facts have nothing to do with Maryland, such that the SEC cannot establish that Miller has sufficient "minimum contacts" with the state in order to support personal jurisdiction. Mot. Dismiss at 1, ECF No. 9-2. Miller also seeks dismissal on the ground that venue

in the District of Maryland is improper.  Finally, Miller argues that even if personal jurisdiction exists and venue is proper in this district, the case should be transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

In response, the SEC argues that for the relevant causes of action alleged in the present case, this Court has personal jurisdiction over Miller pursuant to the combination of Federal Rule of Civil Procedure 4(k)(1)(C), Section 22 of the Securities Act, 15 U.S.C. § 77v(a) ("Section 22" or "§ 77v(a)"), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a) ("Section 27" or "§ 78aa(a)").  Similarly, the SEC asserts that venue is proper under those same statutory provisions. Finally, the SEC argues that Miller does not sufficiently allege that transfer to the Southern District of Florida is warranted based on the relevant factors.

## I.      Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(2).  It is the plaintiff's burden to establish personal jurisdiction.  *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993).  To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction.  *Id.*  In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor.  *Id.*  The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion.  *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763–64 (D. Md. 2009).

The parties disagree about the proper analysis for determining whether personal jurisdiction exists in this case.  Miller argues that pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), federal courts must follow state law in determining the bounds of their jurisdiction

over individuals, so this Court must assess whether the requirements of Maryland's long arm statute have been met and whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment.  Miller contends that such an inquiry ultimately comes down to whether he has sufficient minimum contacts with Maryland to comport with due process.

The SEC, however, argues that Miller's reliance on Rule 4(k)(1)(A) and Maryland's long-arm statute is misplaced in this case because for the relevant securities law causes of action, the Court must apply Rule 4(k)(1)(C), which provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  Here, Section 22 of the Securities Act and Section 27 of the Exchange Act, which directly address jurisdiction, both contain identical language stating that "process . . . may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found," language which establishes the availability of nationwide service for violations of these statutes. 15 U.S.C. §§ 77v(a), 78aa(a); s*ee Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.* 484 U.S. 97, 107–08 (1987) (contrasting the language of these statutory provisions with the language in the Commodities Exchange Act ("CEA") in determining that the CEA does not provide for nationwide service).  The SEC argues that because these provisions provide for nationwide service, and Miller was served in the United States, this Court has personal jurisdiction over him so long as he satisfies a "nationwide contacts" test, under which he has minimum contacts not with Maryland specifically, but with the United States generally.  Opp'n Mot. Dismiss at 17, ECF No. 11.

Several United States Courts of Appeals have agreed with the SEC's position and specifically held that service under Section 27 of the Exchange Act confers personal jurisdiction over defendants anywhere in the country.  For instance, the United States Court of Appeals for the

Second Circuit has held that "Section 27 confers personal jurisdiction over a defendant who is served anywhere within the United States." *Kidder, Peabody & Co. v. Maxus Energy Corp*, 925 F.2d 556, 562 (2d Cir. 1991); *see also Mariash v. Morrill*, 496 F.2d 1138, 1142 (2d Cir. 1974) (rejecting the district court's interpretation that Section 27 did not grant personal jurisdiction over the named defendants by stating that "[i]t is simply too late in the day to argue that Section 27 does not authorize nationwide service of process on any individual named in the complaint . . . [i]n this respect, the language of the statute is clear"). The United States Courts of Appeals for the Sixth, Seventh and Ninth Circuits have also held that the nationwide service provision in Section 27 confers personal jurisdiction over parties served anywhere in the United States. *See, e.g.*, *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) ("We . . . conclude that section 27 confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States."); *Sec. Inv. Protection Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) ("Where a federal statute such as Section 27 of the Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."); *Fitzsimmons v. Barton*, 589 F.2d 330, 332–33 (7th Cir. 1979) (finding that based on "this Congressional authorization of nationwide service of process" and Rule 4, Section 27 provides personal jurisdiction upon service without application of the traditional minimum contacts test).

The United States Court of Appeals for the Fourth Circuit has not answered the question whether Section 27 and Section 22, combined with Rule 4(k)(1)(C), establish personal jurisdiction without the need to establish minimum contacts with the forum state. In analogous contexts, however, the Fourth Circuit has held that when federal law authorizes nationwide service of process, personal jurisdiction exists in any federal district without regard to whether the defendant

6

has "minimum contacts" with the forum state.  For example, in the context of civil causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (2018), the Fourth Circuit held that because Rule 4(k)(1) authorizes personal jurisdiction pursuant to a federal statute, and the civil RICO provision permits nationwide service of process through the language authorizing service "in any judicial district in which such person . . . is found," *id.*, "personal jurisdiction may be asserted over a defendant anywhere in the country." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626, 628 (4th Cir. 1997).  In *ESAB*, because the defendants had been validly served pursuant to the RICO nationwide service provision, personal jurisdiction was established when service was completed.  *Id.* at 627.

Likewise, in *Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989 (4th Cir. 1984), the Fourth Circuit found personal jurisdiction based on the nationwide service provision of Bankruptcy Rule 704, holding that "[w]here Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." *Id.* at 991.  The Fourth Circuit has specified that where there is nationwide service of process by statute, the due process requirement arises under the Fifth Amendment, not the Fourteenth Amendment.  *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.* ("*Plumbers & Pipefitters*"), 791 F.3d 436, 443 (4th Cir. 2015) (holding that because the Employee Retirement Income Security Act "provides for nationwide service of process," as long as a defendant has been validly served pursuant to that provision, a district court has personal jurisdiction "so long as jurisdiction comports with the Fifth Amendment").  Thus, the traditional due process standard under the Fourteenth Amendment,

"minimum contacts" with the forum state, "is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision." *Id.* at 444.

Applying this framework, and consistent with the holdings in other circuits, the Court finds that the nationwide service language in the jurisdictional provisions in Section 22 of the Securities Act and Section 27 of the Exchange Act, combined with Rule 4(k)(1)(C), likewise establishes personal jurisdiction against Miller for claims under these statutes without regard to the existence of minimum contacts with Maryland, where, as here, he was served in the United States. *See, e.g.*, *Plumbers & Pipefitters*, 791 F.3d at 443. Although such a regime may appear to depart from the standard principles of personal jurisdiction in civil cases, Congress's decision to permit such a variance is entirely reasonable because these securities laws with nationwide service provisions relate not to ordinary civil litigation, but to civil enforcement actions for violations of federal laws. *See* 15 U.S.C. § 78aa(a) (stating that federal district courts have exclusive jurisdiction of suits "to enforce any liability or duty created by" the Exchange Act); 15 U.S.C. § 77v(a) (stating that federal district courts "have jurisdiction of offenses and violations" and "suits in equity and actions at law brought to enforce any liability or duty" under the Securities Act); *cf. ESAB Grp., Inc.*, 126 F.3d at 627 (allowing for nationwide service of process and personal jurisdiction for civil actions brought under RICO). The posture of such SEC enforcement actions is analogous to a federal criminal prosecution to enforce federal criminal laws, for which Congress has provided nationwide personal jurisdiction in a federal court over any defendant regardless of contacts with the forum state. *See* 18 U.S.C. § 3231 (providing that for a federal criminal offense, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"); *United States v. Williams*, 341 U.S. 58, 65–66 (1951) (holding that pursuant to 18 U.S.C. § 3231, where the district court had jurisdiction of

offenses against the laws of the United States, there was "jurisdiction of the subject matter . . . and, of course, of the persons charged"); *see also* 18 U.S.C. § 3041 (providing that "the offender may . . . where the offender may be found . . . be arrested and imprisoned or released . . . for trial before such court of the United States as by law has cognizance of the offense"). Indeed, both the Securities Act and the Exchange Act have parallel criminal provisions. *See* 15 U.S.C. §§ 77x, 78ff(a). It is therefore logical that Congress would afford such civil enforcement actions comparable treatment. *See Stern v. Gobeloff*, 332 F. Supp. 909, 912 (D. Md. 1971) (noting that federal statutes providing for nationwide service, such as the securities laws, are "remedial statutes" designed to "give effect to the policy of the statute").

As for the Fifth Amendment due process requirement, the Fourth Circuit would find a due process violation from the exercise of personal jurisdiction over a defendant subject to a nationwide service provision if it "would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision." *Plumbers & Pipefitters*, 791 F.3d at 444. Such a standard generally cannot be met when the defendant is a United States resident. *Id.* Accordingly, the relevant question is "whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv. Protection Corp.*, 764 F.2d at 1315; *see Fitzsimmons*, 589 F.2d at 333 ("Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court."); *Mariash*, 496 F.2d at 1143; *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 820 (D. Md. 1999). Where Miller has admitted that he has, at all times relevant to the allegations in the Complaint, lived as a resident of Florida, the Court finds that he has sufficient contacts with the United States to satisfy the Fifth Amendment due process

requirement.  *See Plumbers & Pipefitters*, 791 F.3d at 444.  The Court therefore finds that this Court has personal jurisdiction over Miller in this action to enforce the Securities Act and the Exchange Act.  The Motion will be denied on the issue of personal jurisdiction.

## II.   Venue

When nationwide personal jurisdiction is available, defendants "must look primarily to federal venue requirements for protection from onerous litigation."  *Plumbers &* Pipefitters, 791 F.3d at 444 (quoting *ESAB*, 126 F.3d at 627).  Miller thus claims that pursuant to Federal Rule of Civil Procedure 12(b)(3), this case must be dismissed for improper venue.  When a plaintiff asserts claims under both the Securities Act and the Exchange Act, "the general rule" is that the "less restrictive jurisdiction and venue provisions" contained in Section 27 of the Exchange Act are to be applied.  *Hilgeman v. Nat'l Ins. Co. of Am*., 547 F.2d 298, 302 n.7 (5th Cir. 1977); *Stern*, 332 F. Supp. at 911 (citations omitted).

Section 27 of the Exchange Act provides for venue in a district in which "any act or transaction constituting the violation occurred," or in which "the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa(a).  Similarly, Section 22 of the Securities Act provides for venue in any district "wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein."  15 U.S.C. § 77v(a).  The SEC argues that since Miller submitted filings to the SEC's EDGAR computer server located in Maryland and also engaged in other business in this state, venue has been established.  The Fourth Circuit has previously addressed the issue of whether the electronic transmission of fraudulent filings to the SEC's computer server located in a particular district can establish venue under Section 27.  In *United States v. Johnson*, 510 F.3d 521 (4th Cir. 2007), a criminal case alleging violations of the Exchange Act, 15 U.S.C. §§ 78j(b), 78ff, the SEC alleged

that the defendant's corporation was required to submit quarterly revenue reports to the SEC, but that the submitted documents contained false, misleading, and inflated revenue numbers. *Id.* at 523. Notably, the SEC's EDGAR server that stored and transmitted these forms was located in Alexandria, Virginia. *Id.* These filings were the only alleged contact that the defendant had with the Eastern District of Virginia, in which the case was ultimately brought. *Id.*

The defendant argued that where the "essence" of the charged crime was the filing of the relevant forms with the SEC in Washington, D.C., venue could not be based on the fact that the SEC directed EDGAR filings to a server in the relevant district "for its own administrative ministerial purposes." *Id.* at 524. The court, however, concluded that "[t]he notion that venue in securities prosecutions must be limited to where the 'essence' of the offense exists finds no basis in the text of § 78aa." *Id.* at 525. "To the contrary, this provision, whose language is manifestly broad, simply requires that 'any act or transaction constituting the violation' have taken place in the pertinent district," a standard that includes causing the transmission of a fraudulent form into a district. *Id.* (internal citations omitted). Therefore, the "'venue-sustaining act need not constitute the core of the alleged violation,' but merely one that is material to the charged offense." *Id.* (quoting *In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003)). Because Johnson had been charged with filing fraudulent documents with the SEC, and a material element of the offense was causing the transmission of a fraudulent Form 10-Q to that server, venue was proper in the Eastern District of Virginia under Section 27. *Id.* Where the venue provision for a criminal violation of the Exchange Act also applies to a civil violation, *see* 15 U.S.C. § 78aa(a), *Johnson* is directly applicable to this case.

Here, the SEC has alleged that Miller filed more than 40 forms with the SEC during the Relevant Period, and that those forms were electronically sent to the SEC's EDGAR system

located in Beltsville, Maryland.  Underlying the Exchange Act claims against Miller is the allegation that he continuously made misleading omissions in these SEC filings that suggested that his beneficial ownership of Abakan was less than he actually owned.  *See* Compl. ¶ 119, 123-124, 128, 131, ECF No. 1.  It does not matter that, as Miller has asserted, he was "unaware that the SEC uses a computer server outside of Washington, D.C." and thus could not have known that his forms were routed to the server in Beltsville, Maryland.  Reply Mot. Dismiss at 7, ECF No. 12.  In *Johnson*, the Fourth Circuit rejected this same argument, stating that "[i]n the context of securities offenses, we need not speculate as to whether there is, or should be, a mens rea requirement when it comes to venue" because "the plain text of § 78aa does not permit us to hold that such a foreseeability requirement exists." *Johnson*, 510 F.3d at 527 (declining "the invitation to judicially engraft a mens rea requirement onto a venue provision that clearly does not have one").  Where the Fourth Circuit has held that submission of misleading public forms to a server located in a district is sufficient under Section 27 to establish venue, this Court finds that venue is proper in the District of Maryland as to the causes of action alleging violations of securities laws due to false or misleading forms.  *See* 15 U.S.C. § 78aa(a).

Venue is also proper for the remainder of the SEC's causes of actions against Miller centered around his engagement in fraudulent or deceitful business transactions with the purchasers of Abakan stock.  *See* Compl. ¶¶ 108, 111, 116.  First, the false or misleading SEC filings sent to Maryland, which would be reviewed and considered by potential investors, arguably constituted one of the means by which the fraud was perpetrated.  Moreover, Miller engaged in other conduct that constituted an "act or transaction constituting the violation" that occurred in Maryland or that reflects that Miller "transact[ed] business" in Maryland.  *See*  15 U.S.C. §§ 78aa, 77v(a); *Johnson*, 510 F.3d at 525 (finding that the "venue-sustaining act" need only be one that is

"material to the charged offense" and may include a transmission into the district from outside the district). First, Miller specifically sold 50,000 shares of Abakan stock to an investor in Maryland in September 2014 and reported it to the Maryland Attorney General, apparently without disclosure of the information withheld from the SEC filings. Second, in order to find additional purchasers for Abakan shares, Miller retained SFG to assist Abakan in developing an investor base. Not only did Miller negotiate and sign a contract with SFG governed by Maryland law, but Miller sent payments by check to SFG at its Maryland address and by wire to its Maryland bank account using funds derived in part from the unregistered public offerings that are the subject of the fraud allegations in the Complaint. Miller also paid SFG in part through the issuance of Abakan shares. Third, Miller communicated with, and visited, the headquarters of NASDAQ OMX Group, Inc. ("NASDAQ") in Rockville, Maryland in an unsuccessful attempt to secure listing of Abakan's shares on the NASDAQ stock exchange. As part of that application process, Miller provided false or misleading information about his beneficial ownership of Abakan shares and about the relationship between Abakan and the Uruguayan Fronts. Where "the concept of 'transacting business' under the [Exchange Act and Securities Act] venue provisions requires less business activity than that necessary to sustain jurisdiction under a 'doing business' or 'minimum contact' standard" and "is intended to have a more flexible and broader meaning than the jurisdictional predicates," the Court finds that Miller both engaged in acts material to the charged violations in Maryland and transacted business in Maryland, such that venue was proper as to all remaining SEC claims brought against Miller not based on the filing of misleading disclosures. *Stern*, 332 F. Supp. at 911 (quoting *Uccellini v. Jones*, 182 F. Supp. 375 (D.C. 1960)) (finding that venue in Maryland was appropriate where the defendants made telephone calls and sent invoices into the state); *cf. United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807, 810 (1948) (holding that

"transacts business" as included in the Clayton Act venue provision refers to a "practical, nontechnical, business standard" encompassing a "broader business conception of engaging in any substantial business operations"); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 227–28 (2d Cir. 1963) (recognizing the similarity of the venue provisions of the Clayton Act, Section 22 of the Securities Act, and Section 27 of the Exchange Act).   Accordingly, the Court will deny the Motion on the issue of improper venue.

## III.   Transfer

Finally, Miller also seeks for this case to be transferred to the United States District Court for the Southern District of Florida, the district in which he resides.   The Court analyzes this request under the change-of-venue statute, 28 U.S.C. § 1404(a).   *See Lafferty v. St. Riel*, 495 F.3d 72, 78 (3d Cir. 2007) (observing that consideration of transfer under § 1404(a) is appropriate "when venue is proper").   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought[.]"   28 U.S.C. § 1404(a) (2018); *see Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984).   To prevail on a motion under § 1404(a), the moving party "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."   *Helsel v. Tishman Realty & Const. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002).   The Court weighs a number of case-specific factors in making this determination, including:  (1) the weight accorded to the plaintiff's choice of forum; (2) witness convenience and access to sources of proof; (3) the convenience of the parties; and (4) the interest of justice.   *Plumbers & Pipefitters*, 791 F.3d at 444; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D. Md. 2002).

Miller argues that venue is more appropriate in Florida in part because he is a resident of that state and the summons in this case was served there. He also states that the relevant books and records, as well as the majority of witnesses, are in Florida. Finally, Miller broadly claims that it would be "burdensome and unduly expensive for [him] to litigate this action in Maryland." Mot. Dismiss at 10; Miller Decl. ¶ 19, ECF No. 9-1.

The SEC does not dispute that this case could have been brought in the Southern District of Florida but notes that "[a]s a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Plumbers & Pipefitters* 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props.,* LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). This factor is relevant here because the SEC has represented that the relevant enforcement staff are based in Washington, D.C., such that extended travel to Florida would be inconvenient and likely costly to taxpayers. *See United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 775 (D. Md. 2017) (holding that where the plaintiff is a government agency, the choice of venue is entitled to some deference, but less deference than would usually be given to the plaintiff's choice). Although Miller's witnesses are based in Florida, Miller does not provide details on which witnesses are necessary to his defense and how they would be inconvenienced in particular. *See Helsel*, 198 F. Supp. 2d at 712 (declining to transfer to a different venue based in part on the defendants' failure to provide affidavits from the specific witnesses at issue detailing the hardship associated with the chosen venue). Where the SEC's witnesses include individuals from Maryland and nearby states such as New Jersey and Ohio, as well as witnesses from Florida, Colorado, Washington, and British Columbia, Miller has not shown how witness convenience and access to sources of proof favor transfer.

Finally, Miller has failed to meet his burden to show that a transfer will better serve the interests of justice.  Even though he is based in Florida, as discussed above, Miller transacted business with a Maryland company relating to the sale of Abakan shares and personally visited NASDAQ in Maryland to advance the sale of Abakan shares based on allegedly fraudulent statements.  Miller and Abakan sold over 387,000 shares to Maryland investors.  Where Maryland has an interest in a case involving its residents and businesses with whom the defendant willingly engaged, the Court cannot find that the interests of justice warrant transfer of this case to a different venue.  The Court will deny the request for transfer to the Southern District of Florida.

## CONCLUSION

For the foregoing reasons, Miller's Motion to Dismiss or Transfer will be DENIED.  A separate Order shall issue.


Date: June 10, 2020                          /s/  *Theodore D. Chuang*
                                        THEODORE D. CHUANG
                                        United States District Judge