**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

February 13, 2023

**LETTER ORDER**

RE:   *Securities and Exchange Commission v. Miller*
      DLB-19-2810

Dear Counsel:

This letter order memorializes my rulings during the January 24 hearing and addresses the outstanding issues raised in the defendant Robert Miller's motion to exclude the report and testimony of the expert witness for the Securities and Exchange Commission ("SEC"), Professor Arthur Laby. ECF 49. For the reasons stated on the record, the defendant's motion is granted as to Prof. Laby's three customs and practices opinions. For the reasons stated below, the motion is granted as to any remaining opinions and denied as to the background testimony on securities concepts.

In a 32-page, 7-count complaint, the SEC alleges that Mr. Miller violated the Securities Act of 1933, 15 U.S.C. §§ 77a – 77aa, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a – 78qq, by failing to disclose his beneficial ownership of Abakan shares to the SEC and investors. *See* ECF 1. The term "beneficial owner" is defined in Rule 13d–3:

> For purposes of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or, (2) Investment power which includes the power to dispose, or to direct the disposition of, such security.

17 C.F.R. § 240.13d–3(a). This definition is relevant to every count, including Count V, which alleges that Miller was the beneficial owner of more than 5 percent of Abakan's shares including "the Abakan stock held in the Uruguayan Fronts" but failed to file true and accurate reports with respect to his beneficial ownership as required by law. *See* ECF 1, ¶¶ 121–25. To prove Miller was a beneficial owner of certain Abakan shares, the SEC seeks to introduce Prof. Laby's testimony under Rule 702 of the Federal Rules of Evidence.

Rule 702 provides:

> A witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note (2000 amendments). Implicit in the text of Rule 702 is a district court's "gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 597 (1993)). The Fourth Circuit has counseled that courts applying these standards "should be conscious of two guiding, and sometimes competing principles[:] Rule 702 was intended to liberalize the introduction of relevant expert evidence [and] expert witnesses have the potential to be both powerful and quite misleading." *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 481 (4th Cir. 2018) (quotation omitted).

<u>Non-Customs and Practices Opinions</u>

Section VII of Prof. Laby's report contains three, now-excluded customs and practices opinions and the bases for them, with each opinion in a separate subsection. At the end of the subsection for the first customs and practices opinion, Prof. Laby appears to give another opinion—arguably distinct from the customs and practices opinions. He states:

> Beneficial ownership of securities is determined by a fact specific inquiry and no one fact is determinative. In other words, the fact that Miller asserted in letters that Green Chip and Stratton were not affiliates of Abakan does not end the inquiry of whether those entities are under common control of the issuer, or whether the shares owned in the names of those entities were beneficially owned by Miller. Here, several facts, including the following, indicate that Miller had the ability to direct the disposition of Abakan shares held by Green Chip and Stratton:
>
> - Miller initiated the key transactions discussed in this Report
> - Miller negotiated the key transactions discussed in this Report
> - Miller prepared the relevant documents
> - Ferris never met Lecueder or spoke to her
> - Most of the funds from the sale of Abakan shares went to Abakan or Miller-related companies

ECF 49-2, at 35.

This apparent opinion within an opinion follows Prof. Laby's lengthy recitation of his interpretation of record evidence about Miller's conduct. He first discusses three loan transactions, concluding that Miller's role "has the hallmarks of someone publicly offering and selling Abakan shares" and that he "directed" each loan. *Id.* at 23–27. Prof. Laby next describes how Miller "directed the purchase" of two sales of Abakan shares. *Id.* at 27–32. In doing so, he claims to know how other people viewed Miller's role in the sale transactions. *See id.* at 28 ("The other participants in the transaction regarded Miller as the person responsible for the sale . . . ."). And he claims to know Miller's motives. *Id.* ("To convince others that the shares were unrestricted, Miller represented that Green Chip and Abakan were not affiliated."); *id.* at 30–31 ("[Miller's action] was done to satisfy the broker that the shares were freely trading shares."). Prof. Laby then describes other correspondence that he believes "suggest that Miller controlled the use of Stratton's Abakan shares." *Id.* at 33. Based on his interpretation of selected record evidence, he concludes that "Miller had the ability to direct the disposition of Abakan shares." *Id.* at 35.

The touchstone of admissibility is whether the testimony will assist the jury. *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). It does not assist the jury for an expert to give testimony that "draws a legal conclusion by applying law to the facts . . . because it supplies the jury with no information other than the witness's view of how the verdict should read." *Offill*, 666 F.3d at 175 (cleaned up and quotations omitted). That is exactly what Prof. Laby proposes to do here. He does nothing more than draw a legal conclusion—that Miller was a beneficial owner because he had the ability to dispose of the shares—by applying the law on beneficial ownership to the facts as he sees them. The law professor marshals through the evidence in the record, selecting the evidence he deems relevant and drawing inferences in favor of the SEC, and ultimately concludes that Miller had the ability to direct the disposition of Abakan shares. While the SEC stresses that Prof. Laby does not expressly opine that "Miller was the beneficial owner of the shares," he, in fact, does just that, declaring that "emails, documents, and other contemporaneous evidence discussed above make it appear that Miller had or shared beneficial ownership of those shares by virtue of his ability to direct investment decisions regarding those shares." ECF 49-2, at 34. Even were the Court to exclude this particular statement, Prof. Laby's opinion that Miller was a beneficial owner is implicit, if not explicit, in the rest of his proposed testimony, because someone who has the power to "direct the disposition of shares" is a beneficial owner under Rule 13d–3. Such testimony does not help the trier of fact understand the evidence or determine a fact in issue. *See, e.g.*, *SEC v. Ambassador Advisors LLC*, 576 F. Supp. 3d 250, 259–60 (E.D. Pa. 2021) (excluding securities regulation law professor's expert testimony because "[w]ere he to review the evidence in this case, the only thing he could compare it to would be the applicable securities law. But that is the jury's role—not [the expert's]"); *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 277, 283 (D. Conn. 2017) (excluding law professor's opinions applying corporate governance concepts to specific facts because "expert testimony that usurps . . . the role of the jury in applying [the] law to the facts . . . does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach and thus attempts to substitute the expert's judgment for the jury's" (cleaned up and quotations omitted)); *see also* Fed. R. Civ. P. 704 Advisory Committee Notes ("Under Rules 701 and 702, opinions must be helpful to the trier of fact . . . . These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach."). At trial, the SEC may introduce the same evidence that Prof. Laby reviewed and, during closing argument, may ask the jury to draw the same conclusions from the evidence that Prof. Laby drew. *See Kidder, Peabody & Co.*

*v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 405 (S.D.N.Y. 1998) (excluding law professor's expert opinion that would "usurp the role of the jury" and noting exclusion would "work[] no unfairness upon" defendant because jurors could still "apply [the] law to the facts as they find them, as indeed they should, in fulfillment of the Nation's legal traditions").

Background Testimony

Miller also seeks to exclude Prof. Laby's background testimony on securities concepts, discussed in Section IV of his report. *See* ECF 49-2, at 6–14. This section includes background information on the SEC, registration, participation in the offer or sale of securities, secondary market trading and ongoing disclosures, CEO and CFO certifications, penny stocks, fraudulent conduct, and beneficial ownership. *Id*. For the reasons stated on the record, and with no objection by the SEC, I grant the motion to exclude testimony in the first and last paragraphs of subsection IV.B.3 ("Participation in the offer or sale of securities") and the entirety of subsection IV.F ("Fraudulent Conduct"). *Id.* at 9–10 (Section IV.B.3), 12–13 (Section IV.F). As to the remainder of Prof. Laby's background testimony on securities concepts in Section IV of his report, the motion to exclude is denied for now. If, upon seeing the jury instructions, I conclude that the background testimony, in part or whole, usurps the role of the Court in instructing the jury on the law, I may reconsider its admissibility. But for now, the testimony is not excluded.

Rule 702 permits an expert to "testify in the form of an opinion *or otherwise*" (emphasis added). The 2000 Amendments to the rule did "not alter the venerable practice of using expert testimony to educate the factfinder on general principles." Fed. R. Evid. 702 advisory committee's note (2000 amendments). For this kind of generalized testimony—which does not attempt to apply principles to the specific facts of the case—Rule 702 requires only that "(1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." *Id.*; *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 345 n.12 (D. Md. 2011); *see also First Data Merchant Servs. Corp. v. SecurityMetrics, Inc.*, No. RDB-12-2568, 2014 WL 6871581 (D. Md. Dec. 3, 2015) (noting advisory committee note's suggestion that "expert testimony on general background facts is subject to less stringent standards than main, substantive facts").

Prof. Laby is qualified to explain securities concepts to the jury. He has been a full-time Professor of Law at Rutgers Law School since 2006. ECF 49-2, at 3. He has taught courses in Securities Regulation, Business Organizations, Fiduciary Law, and Regulation of Securities Intermediaries. *Id.* Before joining the Rutgers faculty, Prof. Laby served on the SEC staff from 1996 to 2005. *Id.* at 4. His most recent role was Assistant General Counsel, which involved the supervision of attorneys responsible for advising Commissioners, General Counsel, and senior staff on regulatory and enforcement matters. *Id.* Prof. Laby has authored publications and given presentations on the standards of conduct applicable in the securities markets, and he organizes conferences about securities matters. *Id.* at 4–5.

Prof. Laby not only is qualified to provide the background testimony, but his testimony, if ultimately permitted, would be reliable. The Court has "broad latitude" to determine "reasonable measures of reliability in a particular case." *Nease*, 848 F.3d at 229 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999)). Experience alone can provide a sufficient foundation for

reliable expert testimony, which "need not rely on anything like the scientific method." *Casey*, 823 F. Supp. 2d at 345 n.9 (quotation omitted).  The purpose of the reliability inquiry is to determine whether the expert who is "basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire Co.*, 526 U.S. at 152.  Prof. Laby testified that his overview of securities concepts is based on his familiarity with securities laws, regulations, and SEC publications.  *See* ECF 49-3, at 14.  Throughout his two-plus decades of experience in and adjacent to the securities industry, he has regularly reviewed publications on registration and offerings.  *Id.* ("Part of my teaching corporate law and securities regulation is to make sure I have a sound understanding of the practice that's typical[ly] followed in various organizations that I'm affiliated with.").  Miller argues that Prof. Laby is biased in favor of the SEC, but other than that, Miller does not seriously contest the reliability of his testimony on securities law concepts.

As to whether the testimony will assist the factfinder, I cannot make this determination at this time.  This may be a case in which the "legal regime is complex and . . . the witness' testimony would be helpful in explaining it to the jury," *Offill*, 666 F.3d at 175, or it may be a case in which the testimony usurps the role of the Court in instructing the jury on the law.  *See id.*  Until I see the jury instructions, I cannot determine whether, or to what extent, Prof. Laby's background testimony will assist the jury or usurp the Court's role.  But for now, the testimony appears helpful in explaining securities concepts, and it is not excluded.  I will revisit this ruling after I see the proposed jury instructions.

Although informal, this letter is an Order of the Court and shall be docketed as such.

Sincerely,

Deborah L. Boardman
United States District Judge